**FILED - GR**
January 12, 2026 3:31 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: __JW / 1-13__

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE ANTHONY BELL, #240434
    Plaintiff,

v

HEIDI WASHINGTON, et al.
    Defendants

Case No.
Hon.
Mag.

**1:26-cv-115**
**Ray Kent**
**U.S. Magistrate Judge**

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT

### Introduction

Tyrone-Anthony Bell (Mr. Bell) a state prisoner, files this civil action under 42 USC §§ 1981, 1983, 1985(2)(3) and 1986 due to acts of conversion, MCL 600.2919 and civil conspiracy. MDOC employees were working outside the scope of their employment. Mr. Bell raises claims of denial of First, Eighth and Fourteenth Amendment rights. Exclusion of a federally funded program, violation of Title II of the American with Disabilities (ADA) 42 USC § 12101 et seq. and MCL 750.85.

### Jurisdiction

1.] The court has jurisdiction over Plaintiff's claims of violations of the federal constitutional rights under 42 USC § 1331(1) and 1343.

2.] The Court has supplemental jurisdiction over Plaintiff's state law tort claims under 28 USC § 1367.

3.] The Western District of Michigan is the proper jurisdiction because Plaintiff, witnesses, and a majority of the defendants either conduct business, are employed, or reside in the Western District of Michigan 28 USC § 1404.

### Venue

4.] The Western District is the appropriate venue for this civil action because Plaintiff, witnesses, and a majority of the defendants either conduct

business, are employed, or reside in the Western District of Michigan 28 USC §§ 1390(a); 1391(b)(1); (c)(2).

Parties

Plaintiff:

5.] Mr. Bell, is incarcerated within the Michigan Department of Corrections (MDOC) at all relevant times related to these claims, Mr. Bell was housed at Carson City Correctional Facility (DRF) at 10274 Boyer Road, Carson City, MI 48811. Mr. Bell is currently housed at Gus Harrison (ARF), 2727 E. Beecher, Adrian, MI 49221, (517) 265-3900. Mr. Bell is an American with a disability, who "must rely on prison authorities to treat his medical needs. if the authorities fail to do so, the needs will not be met." Estelle v Gamble 429 US 97, 103 (1976).

Defendants:

6.] Heidi Washington, Director and Chief Administrative Officer of MDOC, employed at MDOC headquarters located at Grandview Plaza, 206 E. Michigan Ave. P.O. Box 30003, Lansing, MI 48909. Her duties and obligations are described in PD 01.01.101(A).

7.] Richard Russell, MDOC legal administrator, employed at MDOC headquarters. His duties and obligations are described in PD 01.01.101(D)(2). His office responds to Step III grievances and Declaratory Rulings.

8.] Randee Rewerts, warden, employed at DRF. His duties and obligations are described in Michigan Administrative Code R791.2205, and PD 03.02.130 (O); (FF). He responds to Step II grievances at DRF. He is also entrusted with providing accommodations for Offenders with disabilities at DRF, PD 04.06.155.

9.] M. Mates, deputy warden, employed at DRF. His duties and obligations are described in Mich. Admin. Code R791.2205. He assist in responding to Step I grievances, PD 03.02.130(AA).

10.] Jason Garcia and K. Nevins are assistant deputy wardens, employed at DRF. Their duties and obligations are described in Mich. Admin. Code R791.2205, they assist in responding to Step I grievances, PD 03.02.130(AA).

11.] Unknown Murray and V. Smith, facility manager, employed at DRF. Their duties and obligations are to follow and enforce MDOC's rules, regulations, policies, and procedures, are entrusted with protecting the rights of prisoners, responds to Step I grievances, PD 03.02.130(Y)(3);(AA).

12.] Unknown Miller, prison counselor, employed at DRF. His duties and obligations are to conduct administrative hearings, to follow and enforce MDOC's rules, regulations, policies and procedures.

13.] Lisa Becher, DRF's grievance coordinator. Her duties and obligations are described in PD 03.02.130(P);(X);(Y); (BB);(CC);(GG).

14.] Unknown Truddell, DRF's mailroom personnel. Her duties and obligations are to process mail pursuant to PD 05.03.118, PD 05.03.116, and Mich Admin. Code R791.6603;ACLU Fund of Mich v Livingston Cnty 796 F3d 636, 642 (6th Cir 2015)

15.] Robert Loomis, DRF's American with Disability Coordinator. His duties and obligations are described in PD 04.06.155.

16.] Jane/John Does is the respondent unknown in Step I grievances

17.] Robin Gilbert is the Statewide ADA Cooridinator

18.] Robert Ward and Sgt. Reno are Correctional staff employed at DRF, they are entrusted with protecting prisoner rights pursuant to Mich. Admin Code R791.718

19.] Unknown Blair, Resident Unit Manager (RUM) is entrusted with protecting prisoners rights, pursuant to Mich. Admin Code R791.718, as well as enforcing and following MDOC's rules, regulations, policies and procedures.

20.] Audrey Garnsey, Physician Assistant at DRF. She is entrusted with providing Mr. Bell with a "continuum of medically necessary health care services

that are supported by evidence-based medical research." PD 03.04.100 as well as Mr. Bell's rights under Mich. Admin. Code R791.728

21.] Unknown Kasper, Health Unit Manager, is a medical supervisor at DRF. She is entrusted with providing Mr. Bell with a "continuum of medically necessary health care services that are supported by evidence-based medical research." PD 03.04.100 as well as Mr. Bell's rights under Mich. Admin. Code R791.728

22.] VitalCore Physicians Group, PLLC, is the contracted medical provider for MDOC prisoners, entrusted with providing Mr. Bell with a "continuum of medically necessary health care services that are supported by evidence-based medical research." PD 03.04.100 as well as Mr. Bell's rights under Mich. Admin. Code R791.728, their contract information is Info@vitacorehs.com, 517-273-4079

23.] Defendants acted under the colors of state law. Defendants are sued in their individual capacities for MONETARY DAMAGES ONLY, and in their official capacities for INJUNCTIVE RELIEF ONLY.

FACTUAL ALLEGATIONS

24.] Since Dec. 3, 2024, Defs: Washington, Russell, Rewerts, Mates, Garcia, Nevins and Blair subjected Mr. Bell to torture. MCL 750.85, which constitutes as cruel and unusual punishment, Estelle 429 US at 103-05, the deprivation is not a part of Mr. Bell's sentence, Wilson v Seiter 501 US 294, 297 (1991)

25.] On Dec. 11, 2024, Mr. Bell was engaged in protective conduct, Thaddeus-X v Blatter 175 F3d 378 (6th Cir 1999), of access to the court, Lewis v Casey 518 US 343, 384 (1996), when prison officials, engaged in adverse actions, Thaddeus-X 175 F3d at 394. Def. Truddell converted Mr. Bell's legal documents (mail), MCL 600.2919a, communications from Jason S. Brookner (TX Bar No. 24033684), thereby denying Mr. Bell access to the court, Lewis 518 US at 384, and hindering his ability to communicate with a lawyer related to the pending

civil actions, violating Mr. Bell's rights under Lewis 518 US at 384, Wilson 501 US at 297, ACLU Fund of MI 796 F3d at 642-43.

26.] Jan. 14, 2025, Mr. Bell wrote ADW Garcia about the chair and denial of a chair which resulted in deliberate indifference, by disregarding Mr. Bell's serious medical needs. Mr. Bell suffered from extreme muscle spasms without the chair, Wilson 501 US at 297, constituting cruel and/or unusual punishment.

27.] Feb. 3, 2025 at 1:09pm, Mr. Bell placed a kite in P.C. Miller's kite box, asking about Mr. Bell's administrative hearing for his legal mail rejection.

28.] Feb. 25, 2025, Def. Garnsey subjected Mr. Bell to deliberate indifference and torture DRF-25-03-499-28I, when after reviewing Mr. Bell's x-rays noticed the injury and provided Mr. Bell NO form of medical relief.

29.] Feb. 4, 2025, at 12:16 pm, Mr. Bell was called down to the officer's desk on base, and belittled in front of numerous staff and prisoners for requesting that his administrative hearing be conducted on his legal mail that was wrongfully rejected. P.C. Miller told Mr. Bell loudly, "This is the sixth kite I've received from you, if you send me one more kite, I will personally shred your legal mail and say it's rejected for being voluminous." Mr. Bell explained that Mr. Bell had been waiting since 12-12-24, for a hearing and that the legal mail is time sensitive. P.C. Miller replied, "Don't kite me again or your mail will be detroyed. I will get to it when I get to it." There were two correctional officers and numerous prisoners around that heard this degradation. Pursuant to PD 03.03.130 section (I)(6) which states: "Staff shall not use or engaged in, and shall discourage through appropriate means any person use of, derogatory, demeaning, humiliating, or degrading actions, or language." Section (J) "Prisoners shall not be subjected to personal abuse form staff." And (K)(4) "The following are prohibited: Willful infliction of mental distress,

degradation, or humiliation." PD 05.03.116(A) which reads: "Prisoners have a constitutional right of access to the courts that may not arbitrarily impeded."

30.] Feb. 6. 2025, Mr. Bell wrote Def. Rewerts about P.C. Miller's unprofessional conduct. The action violates Mich. Admin. Code R791.718(A), and infringed on his First Amendment freedoms. Cf. Wilson 501 US at 297.

31.] Feb. 7, 2025, around 1:45 pm the mail rejection hearing was conducted by Def. Truddell via telephone. Def. Truddell told Def. Miller that Mr. Bell cannot be provided with the documents, Defs. Miller's and Truddell's actions violated Mr. Bell substantial procedural due process rights under MCL 791.252; MCL 24.232(2); First and Fourteenth Amendment rights, where Def. Truddell both initiated the rejection and conducted the administrative hearing infringing on Mr. Bell access to the court.

32.] May 28, 2025, during the time of 9:40 til 9:58 am Mr. Bell witnessed a phone technician in 700 unit conducting maintenance on the ADA phones. The question is why is there maintenance being conducted on a phone not being used by prisoners. This is supported by security surveillance camera (SSC) DRF-2322.

33.] May 29, 2025, around 3:50 pm SSC DRF-2322 shows Mr. Bell with Def. Rewerts in 700 unit having a discussion about Mr. Bell's legal forms he need from the internet.

34.] June 5, 2025, C.O. Parker called health services and informed Jane/John Doe that Mr. Bell needed a muscle relaxer shot due to the severe muscle spasms he was experiencing from using the stool while litigating. Jane/John Doe of health services told C.O. Parker to have Mr. Bell fill out a medical kite. Cf. Wilson 501 US at 297

35.] June 26, 2025, Mr. Bell went to medical to get hearing aide batteries. Mr. Bell asked the nurse could he get the needed muscle relaxer shot cause he (Mr. Bell) was in excruciating pain. The nurse said "No you will have to wait

until your callout." Cf. Wilson 501 US at 297

36.] June 18, 2025, DRF staff passed out extra stools in 700 unit.

37.] June 24, 2025, at around 9:40 til 9:50 am Def. Smith came into 700 unit to discuss with Mr. Bell a grievance about how DRF staff held his legal Jpay messages for a period of three days. Cf. Elrod 427 US at 373

38.] June 25, 2025, SSC DRF-1237 in health services, will show Mr. Bell between 9 am til 9:30 am speaking with RN Turner about his severe muscle spasms and how he could not sleep due to the pain from 6-4-25 til 6-10-25. Mr. Bell almost fell in the shower on 6-14-25 and 6-25-25. RN Turner told Mr. Bell that she would put an R&R on Mr. Bell's file which means that the Provider must see Mr. Bell.

39.] June 26, 2025, Mr. Bell kited Def. Loomis after trying to use the ADA phone. Asked how long before getting the password since his April 1st request.

40.] June 30, 2025, Mr' Bell was seen by Dr. Kelly Adams about back pains. Dr. Adams outlined a plan for diagnosing and treating the issue. First, she wants new x-rays. Second, she will get a cat scan. Third, a steroid shot to Mr. Bell's back. Dr. Adams agreed that Mr. Bell's back (spinal condition/lumbosacral) will not get any better.

41.] July 2, 2025, SSC DRF-1238 in health services will show Mr. Bell with Dr. Dailey getting x-rays of his upper and lower spinal cord, between the time of 9:30-45 am.

42.] July 9, 2025, Mr. Bell wrote Def. Rewerts a kite that reads:

"Pursuant to the ADA policy directive. You can authorize urgent use of the ADA phone. I have a hearing on 7-31-25. And no form of effective communications with counsel. I'm asking you to authorize the use of either the video or caption phone to allow me to prepare for the hearing with my counsel."

43.] July 16, 2025, Mr. Bell experienced a severe muscle spasms after using the stool to write a kite to the warden and grievance.

44.] July 22, 2025, at approximately 3:25 pm, Mr. Bell spoke with Def. Miller explaining to Def. Miller that he (Mr. Bell) has a deadline and cannot call the number provided nor send an email within the time period, thus being denied access to the court, <u>Lewis</u> 518 US at 384.

45.] August 5, 2025, Dr. Peter Sices issued Mr. Bell a special medical accommodation for the use of a chair while conducting legal work after reviewing Mr. Bell's x-rays and conducting an examination of Mr. Bell.

46.] August 17, 2025, Mr. Bell experienced hindrance with his medical needs by C.O. Ward, <u>Estelle</u> 429 US at 104-05, who stated:

> "Me and Deputy Mates were talking about your medical detail, and we agree that you don't need a chair. You have a chair in your room."

> "You can get the chair this time."

47.] August 17, 2025, Mr. Bell wrote a grievance and kite to Def. Rewerts which reads:

> "NOTICE OF INTERFERENCE WITH MEDICAL ACCOMMODATIONS

> On 8-17-25 at or around 9:30 am Mr. Bell approached the correctional officer's desk and requested from C.O. Ward to use the chair as medically prescribed by his doctor.

> C.O. Ward explained to Mr. Bell that he and the deputy warden talked about Mr. Bell's medical detail. And that the deputy warden explained to C.O. Ward that Mr. Bell has a chair in his cell. Mr. Bell informed C.O. Ward that this is not true, Mr. Bell only has two stools in his cell. Neither of which qualifies as a chair. The dictionary on my (Mr. Bell's) JP6 tablet defines a chair as:

> "A movable single seat with a back."

> Webster Unabridged dictionary page 2194

> The stool in Mr. Bell's cell cannot be classified nor called a "chair" where it has NO "back".

> The action also violates PD 03.03.130 Mr. Bell is required to receive humane treatment as it relates to living conditions and medical care. Mr. Bell medical records, which includes recent x-rays requires Mr. Bell to have lumbar support when seated for long periods of time.

> The Supreme court has stated that "deliberate indifference to serious medical needs of prisoner constitutes the 'unnecessary and wanton

infliction of pain ... proscribed in the Eighth Amendment." Estelle v Gamble 429 US 97, 104 (1976); see Erickson v Pardus 551 US 89, 94 (2007). Mr. Bell has a medical accommodation, it is hard for anyone to state that s/he does not know of Mr. Bell's serious medical need nor the risk of denial. Farmer v Brennan 511 US 825, 842-43 (1994). The statement made to Mr. Bell about a conversation with C.O. Ward and an administrator shows a hostile attitude towards Mr. Bell's medical needs|| See Philips v Michigan Dep't of Corrections 731 F. Supp 792, 800 (W.D. Mich 1990). The actions intentionally interfere with Mr. Bell's medical needs. U.S. v State of Michigan 680 F. supp 928, 1002,1043-45 (W.D. Mich 1987).

Mr. Bell has a medical accommodation to use a chair when conducting legal work. The reason being, is Mr. Bell's medical condition causes him to suffer from prolonged pain when seated for periods of time without lumbar support. Mr. Bell has a First Amendment right of access to the court, Lewis 518 US at 384 recognized by MDOC in PD 05.03.116(A)

The United States Supreme Court defines access to the court as:

"the opportunity to prepare, serve, and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty..."

Lewis 518 US at 384

The actions of MDOC actors, agents, and/or employees are impeding Mr. Bell's ability to "prepare, serve and file" documents in the court due to the intentional infliction of unnecessary and wanton pain.

Resolution

Mr. Bell asks that you inform your staff to not interfere with his medical treatment nor his ability to access the court. Lewis 518 US at 384."

48.] August 17, 2025, Mr. Bell filed a request for body worn camera, CSJ-881 form and was threatened with retaliation in the following:

Sgt. Schutt called Mr. Bell to the desk and informed Mr. Bell if he placed in the request for the body worn camera footage that Mr. Bell would receive a misconduct report.

49.] Sept. 9, 2025, at around 10 am Mr. Bell was told by C.O. Ward to go to the Control Center to speak with Sgt. Reno about a grievance written on C.O. Ward refusing to honor Mr. Bell's medical detail for a chair in the future with his comment about. "You can get the chair this time."

50.] After the conversation with Mr. Bell and Sgt. Reno. Sgt. Reno contacted

9 of 36

either Def. Nivens or Def. Garcia, who then called Def. Kasper and instructed her to cancel Mr. Bell's medical detail. Def. Kasper contacted Def. Garnsey to enact the cancellation of Mr. Bell's medical detail. Def. Garnsey put Mr. Bell on a callout for Sept. 11th in the morning.

51.] Sept. 10, 2025, around 10 am (24 hours later from the actions in paragraph #49) Mr. Bell was told to packup his property by C.O. Carter and move to 800 unit from 700 unit.

52.] Sept. 11, 2025, at or around 11:30 am Mr. Bell was called out by Def. Garnsey. She said Def. Kasper told her that medical cannot issue a detail for a chair. And to cancel Mr. Bell's medical detail. Mr. Bell informed Def. Garnsey that he was given the medical detail by Dr. Sices after an examination of himself and his x-rays results, which shows and support that Mr. Bell needs a chair. Def. Garnsey conducted NO examination prior to issuing a new detail which is not "supported by evidence-based medical research." violating PD 03.04.100; Eighth Amendment to the U.S. Constitution. Cf. Wilson 501 US at 297

53.] The retaliatory action all took place within 75 hours of Mr. Bell's continued exercising of his First Amendment right to petition the government to redress a grievance, see ¶¶ 49 thru 52.

54.] Mr. Bell wrote the grievance on August 17th, to halt any form of infringement of his First Amendment right of access to the court, Lewis 518 US at 384, and to be free from cruel and/or unusual punishment, Wilson 501 US at 297

55.] All actions were captured by SCC and body worn camera (BWC) which have video and audio.

56.] Mr. Bell has timely requested that ALL video evidence is preserved for litigation purposes.

57.] Defs: Miller, Garcia, Jane or John Doe, Rewerts, and Russell acted

outside of the scope of their employment when they aided in the furtherance of deprivation of Mr. Bell's First Eighth, and Fourteenth Amendment freedoms, by either upholding the legal mail rejection violating MDOC's mailing policy, or by upholding the grievance findings related to the mail rejection raising a claim under 42 USC §§ 1981; 1985(3). Cf Wilson 501 US at 297

58.] Defs: Loomis, Garcia, Jane/John Does, Gilbert, Rewerts and Russell denied Mr. Bell an American with a disability, hard of hearing prisoner, needed medical equipment in order to have effective communications with his lawyers, family and friends, raising a claim under 42 USC §§ 1981; 1985(3).

59.] Def. Rewerts failed to provide the ADA equipment during an urgent incident Mr. Bell's needed to have effective communications with his lawyers Kama Patel about forthcoming litigation, Bell v MDOC case no. 24-004122-AA.

60.] Mr Bell contends that the cases mentioned about raised non-frivolous claims. In 21-cv-10705, Mr. Bell filed a civil action against the MDOC based on the fact that MDOC employess and medical intentionally exposed him to two highly infectious COVID-19 positive prisoners, by placing the prisoners in general population. Mr. Bell raises claims of deliberate indifference and Cruel and Unusual punishment. In case No. 23-12720, Mr. Bell raised claim of disparate treatment when he was similarly situated to other post secondary student, pro se litigants and legal writers. Mr. Bell is a paralegal, Jackson College student, and pro se litigant. The disparate treatment caused Mr. Bell denial of complete education and access to the court. Case no 24-1578 raised the same claim on appeal. 23-90086-CML settled for $50 million dollars after Corizon defendant of 21-cv-10705 filed for bankruptcy.

61.] Mr. Bell has pled the facts with specificity as required by Rule 26.

CLAIM I
(First, Eighth, and Fourteenth Amendments 42 USC § 1983)
DENIAL OF ACCESS TO THE COURT

62.] Mr. Bell incorporates ¶¶ 1 thru 61 by reference.

63.] Mr. Bell has First Amendment right of access to the courts, Bounds v Smith 430 US 817 (1977); Lewis 518 US 343.

64.] Mr. Bell's right of access to the court includes the opportunity to "prepare, serve, file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein and to send and receive communications to and from judges, courts, and lawyers concerning such matter|'" Lewis 518 US at 384

65.] Mr. Bell has a right not to be retaliated against from engaging in his First Amendment rights. Thaddeus-X 175 F3d at 394.

66.] Dec. 11, 2024, Mr. Bell received legal mail from attorney Jason S. Brookner related to In re Tehum Care Services case no. 24-90086-CML, which is the child of Mr. Bell's civil actions case no. 21-cv-10705 and 21-cv-12481, violating Mich Admin. Code R791.6603(7)(b) and (8); DOM 2023-18; Lewis 518 US at 384. Cf. Wilson 501 US at 297; ACLU Of Fund MI 796 F3d at 642-44

67.] Dec. 11, 2024, Def. Truddell opened Mr. Bell's legal mail outside of Mr. Bell's presence, while Mr| Bell has a special legal mail handling logged, violating PD 05.03.118(HH); (JJ); (KK); (LL) and ACLU Fund of Michigan 796 F3d 636, 643-44(6th Cir 2015); Lewis 518 US at 384, Cf. Wilson 501 US at 297, constituting cruel and/or unusual punishment.

68.] Def. Truddell retaliated against Mr. Bell by rejecting Mr. Bell's legal mail on Dec. 11, 2024, under false pretenses. The rejection was based on Mr. Bell receiving more than 22 pages of legal documents which is not pursuant to any MDOC rules, regulations, policies, or procedures related to legal mail, violating Mich Admin. Code R791.6603(7)(b) and (8);PD 05.03.118(PP)(22); Lewis 518 US at 384. Def. Truddell was working outside the scope of her employment.

69.] Mr. Bell wrote Def. Truddell immediately in Dec[ll] 2024, and Jan. 2025, requesting the legal documents immediate delivery unto him. This request fell on deaf ears.

70.] MDOC's operating procedure (OP) 04.07.112(A) reads: "A prisoner is permitted to possess legal property as defined in PD 04.07.112 "Prisoner Personal Proerty' if the prisoner's proper exceeds allowable limits due to excess legal property, a hearing shall be conducted by LARA to determine if the property is allowable excess legal property. The hearing will ordinarily be scheduled to commence within seven calendar days after the date the property was confiscated and completed within 30 calendar days after the date the property was confiscated, the hearing on those items needs to be completed within seven calendar days after the date the prisoner provides a list of such cases to the hearing investigator. If the prisoner presents evidence of a deadline, the property to be returned to the prisoners within the seven day period."

71.] Mr. Bell did not receive the hearing for the rejected legal mail until Feb. 7, 2025, see Exhausted Grievance DRF-25-02-374-27B, which was wrongfully rejected "policy and procedure, multiple issues"

72.] DOM 2023-18 instructs mailroom staff when mail is received that causes an inquiry, the sender (i.e. court or attorney) should be contacted and verified that the legal documents were in fact sent to the prisoner for legitimate reasons. See also PD 05.03.118(KK).

73.] Defs: Truddell and Miller had the name, bar number and phone number of Jason S. Brookner, see Exhausted Grievance DRF-25-02374-27B. Def. Miller still conspired with Def. Truddell in her retaliatory conduct by depriving Mr[ll] Bell of the legal mail violating MDOC PD 05.03.118(KK) and Lewis 518 US at 384, raising a claim under 42 USC § 1985(3).

74.] The attorney's name, bar number and phone was given to Def. Miller on

Feb. 7, 2025, but instead of providing Mr. Bell with an impartial fact finder at the administrative hearing MCL 791.252(i) Def. Miller called Def. Truddell and allowed her to be the final decision maker depriving Mr. Bell of procedural Due Process and Equal Protection of law. See ¶145

75.] Mr. Bell was present during the speaker phone conversation/hearing. Def. Miller stated: "I have Mr. Bell here and he has other documents from attorney Brookner numbering more than one hundred pages which he received at once while at Cotton Corr. Fac. Mr. Bell has provided me with the attorney's bar number and phone number. Can we just verify this and give it to Mr. Bell?" Def. Truddell stated:

> "The envelope was not marked legal mail, but upon opening the mail I immediately noticed that it was in fact legal mail, but it is too many pages to copy. I have not read the documents but we still are not giving them to Mr. Bell."

Violating Mich. Admin. Code R 791.6603(8) and (9); MCL 791.252(i); Lewis 518 US at 384; MCL 24.232(2).

76.] After the conversation in ¶ 75. Def. Miller said, "Well, Mr. Bell you cannot have the documents so I cannot give them to you."

77.] Mr. Bell explained two facts to Def. Miller. First, legal mail does not have a page limit. Second, that if he is forced to miss a reply deadline and have to file a grievance that he would be forced to request triple the value of the 50 million dollar settlement under the Michigan statute for conversion. DRF-25-02-374-27B.

78.] Def. Miller stated: "Well, Mr. Bell I am sure that you are going to file a grievance, and I will have them hold the documents until the grievance is complete. See Administrative hearing Report.

79.] Mr. Bell immediately filed DRF-25-02-374-27B. Def. Garcia reviewed the Step I grievance and John/Jane Does #1 A/CRR was the respondent.

80.] Pursuant to PD 03.02.130(B) the respondent is the staff person who

investigates and responds to a grievance.

81.] Pursuant to PD 03.02.130(Y) the respondent shall generally be the supervisor of the person being grieved.

82.] Pursuant to PD 03.02.130(AA) the respondent shall interview the grievant to clarify issues of merit, to further an investigation, or otherwise aid in resolution of the grievance at Step I.

83.] Jane or John Doe never called Mr. Bell out to be interviewed about the grievance. The grievance was WRONGFULLY REJECTED on 2-20-25, for "policy, procedure, multiple issues." See Step I DRF-25-02-374-27B

84.] Pursuant to PD 03.02.130(J) grievance shall be rejected for: "1. It is vague, illegible, or contains multiple unrelated issues," All of the issues raised in the grievance were related to Def. Truddell's legal mail rejections denying Mr. Bell access to the court, Lewis 518 US at 384.

85.] Pursuant to POD 03.02.130(J) grievance shall be rejected: "8. The prisoner is grieving content of the policy or procedures except as it was specifically applied to the grievant." In grievance DRF-25-02-374-27B. Mr. Bell was grieving the content of the policy and procedure as it effected Mr. Bell's ability to access the court. Lewis 518 US at 384

86.] PD 05.03.116(A) reads: "Prisoners have a constitutional right of access to the courts that may not be arbitrarily impeded. No retaliation may be taken against a prisoner who has filed a lawsuit or is pursuing litigation."

87.] Mr'' Bell did not have any legal mail rejections related to the legal documents sent by attorney Jason Brookner until after staff was made aware that Mr. Bell was engaged in a 50 million dollar settlement.

88.] Pursuant to PD 03.02.130''BB) "[e]ach Step I grievance response shall be reviewed by the respondent's supervisor prior to the grievance being returned to the Step I Grievance Coordinator to ensure that it appropriately addresses the

issue raised in the grievance and accurately reflects Department policy and procedure. The respondent shall identify in the respond applicable policies, rules, or procedures that are directly related to the issue of conduct being grieved,

89.] Defs: Garcia and Jane/John Does acted outside the scope of their employment when they reviewed and responded to the Step I grievance, raising violations of PD 05.03.118(PP)(22), legal mail has no page limits, and Mr. Bell has a special handling request that all legal mail is opened in his presence, thereby, raising a claim under 42 USC §§ 1981 and 1985(3). The mail was opened outside of Mr. Bell's presence violating his rights as defined in ACLU Fund of Mich 769 F3d at 643-44, Cf. Wilson 501 US at 297

90.] Mar. 12, 2025, Def. Rewerts choice to continue with the deprivation of Mr. Bell's First, Eighth, and Fourteenth Amendment rights, by also rejecting the grievance instead of addressing the SERIOUS issue of denial of access to the court, Lewis 518 US at 384, and WRONGFULLY rejected legal mail, raising a claim under 42 USC §§ 1985(3); 1986.

91.] Def. Russell rejected Mr. Bell's Step III grievance, he engaged in the furtherance of deprivations of Mr. Bell's First, Eighth and Fourteenth Amendment rights, he failed to correct the actions as was within his authority, raising a claim under 42 USC §§ 1985(3); 1986

92.] The U.S. Supreme Court holds, that even a minimal period of infringment of First Amendment freedoms, unquestionably constitutes an irreparable injury, Elrod v Burns 427 US 347, 373 (1976). Defs:  Truddell, Miller, Garcia, Rewerts, and Russell are directly responsible for the injury to Mr. Bell, they had the authority to correct, but failed to do so, raising a claim under 42 USC §§ 1985(3); 1986.

93.] Mr. Bell was denied a chair to prepare, legal documents for his pend-

16 of 36

ing litigation, DRF-25-01-014-28E; DRF-25-03-449-28I; DRF-25-03-633-03f, thereby raising a claim under 42 USC § 1983, violating Lewis 518 US at 384 and causing an irreparable injury, Elrod 427 US at 373.

94.] Mr. Bell has pled with specificity the actions of MDOC staff to conspire to deprive Mr. Bell of the First Amendment rights of access to the court, Lewis 518 US at 384, and Fourteenth Amendment right of Equal Protection of the Laws, as required by Rule 26, that resulted in an actual irreparable injury, Elrod 427 US at 373 without a rational basis effecting a fundamental right.

CLAIM II<br>(Eighth, and Fourteenth Amendments 42 USC § 1983)<br>AMERICAN WITH DISABILITY ACT VIOLATION

95.] Mr. Bell incorporates ¶¶ 1 thru 94 by reference.

96.] Mr. Bell, a qualified American with a disability, 42 USC § 12132; PD 04.06.155(A) was denied auxiliary equipment needed by actors, agents, and/or employees of the MDOC, violating McBride v MDOC 294 F. Supp 3d 695, 721 (E.D. Mich 2015).

97.] Mr. Bell is hard of hearing and needs hearing aids to effectively communicate with others, 42 USC § 12102(4)(E)(i)(I)

98.] MDOC recognizes this impairment and offers protections under OFFENDERS WITH DISABILITIES, under PD 04.06.155 and PD 04.06.156.

99.] Def. Garnsey on Feb. 25, 2025, denied Mr. Bell, an American with a disability a chair. Mr. Bell needs lumbar support when seated to prepare legal documents in his pending litigation. Def. Garnsey's action intentionally subjected Mr. Bell to unnecessary and wanton excruciating prolonged pain, Wilson 501 US at 297, constituting cruel or unusual punishment, Estelle 429 US at 104-05

100.] Feb. 25, 2025, Def. Garnsey with Mr. Bell present reviewed Mr. Bell's x-rays detailing Mr. Bell's spinal injury (lumbosacral).

101.] Def. Garnsey knew of the shooting and excruciating pain and suffering

that Mr. Bell was experiencing and would endure without a chair, but blatantly disregarded Mr. Bell's health, which constitutes as an intentional infliction of pain, DRF-25-02-449-28I, and cruel or unusual punishment, Wilson 501 US at 297,.

102.] April 1, 2025, Mr. Bell filed a CSJ-562, ADA Request for Accommodations to Def. Loomis.

103.] April 9-10, 2025, Mr. Bell was unable to effectively communicate with attorney Kama Patel via traditional phone raising access-to-court, Lewis 518 US at 384, and discrimination, 42 USC § 1983 claim. See also Elrod 427 US at 373

104.] Def. Loomis failed to address this urgent need and directed Mr. Bell to have his lawyer use a video visit, in violation of McBride v MDOC 294 F. Supp. 3d 695, 721 (E.D. Mich 2018)

105.] Grievance DRF-25-04-0864-27B properly exhausted claims, was WRONGFULLY denied for vagueness, Reeves Florek 2025 US Dist Lexis 1993348 at * 7. Step II and Step III grievances were also WRONGFULLY rejected, raising claims under 42 USC §§ 1983; 1985(3); and 1986.

106.] DRF-25-04-0864-27B, was WRONGFULLY denied for being vague; Reeves v Florek 2025 US Dist Lexis 193348 at *7 (E.D. Mich, Sept. 30, 2025)(Notably, defendants bear the burden of showing that the grievance screener's reasoning for the rejection was proper under the facts)

107.] April 25, 2025, Jane/John Doe, respondent, rejected DRF-25-04-0864-27b WRONGFULLY for being vague. Reeves, Id.

108.] May 3, 2025, Def. Garcia upheld, WRONGFUL rejected DRF-25-04-0864-27B.

109.] May 12, 2025, filed his Step II grievance to Def. Rewerts, WRONGFULLY rejected on May 20, 2025 for violating of PD 03.02.130(P) and (Y).

110.] May 27, 2025, Mr. Bell filed his Step III grievance. Def. Russell upheld the rejections raising a claim under 42 USC §§ 1983, 1985(3) and 1986.

CLAIM III
(First, Eighth, and Fourteenth Amendments 42 USC § 1983)
DUE PROCESS AND EQUAL PROTECTION VIOLATION

111.] Mr. Bell incorporates ¶¶ 1 thru 110 by reference.

112.] Mr. Bell has a special handling, PD 05.03.118(HH), which requires mail to be opened in his presence, ACLU Fund of Michigan 796 F3d at 643-44.

113.] Def. Truddell violated Mr. Bell's right by opening legal mail outside of Mr. Bell's presence, ACLU Fund of Michigan Id, raising a claim under 42 USC § 1983.

114.] Legal mail has no page limit; voluminous mail restrictions, PD 05.03.118(PP)(22) is inapplicable to legal mail, yet Def. Trudell WRONGFULLY rejected legal documents. PD 05.03.118(PP) reads:

"Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or coverage criminal activity, or interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:

#22 Voluminous mail (i.e. greater than 12 single sided pages) in legible font, which is the equivalent of two-ounce first class stamp. THIS DOES NOT INCLUDE LEGAL MAIL from an entity, identified in paragraph HH regardless if the prisoner request special handling or mail from a State Department or organization contracted through a State Department conducting official business of prisoner" (Emphasis added to original text)

115.] MCL 24.232(2) reads:

"A rule or exception to a rule must not discriminate in favor of or against any person. A person affected by a rule is entitled to the same benefits as any other person under the same or similar circumstances."

116.] Defs. Truddell, Miller, Garcia, Rewerts and Russell have violated Mr. Bell's statutory rights under MCL 24.232(2) and state created rights under PD 05.03.118(PP)(22); and Mich Admin Code R791.6603, which supports that they were working outside the scope of their employment, raising a claim under 42 USC 1985(3); 1986 where Defendants violated Mr. Bell's rights under the First Eight

and Fourteenth Amendment § 1; ACLU Fund Of MI 796 F3d at 642-43

117.] Mr. Bell was forced to send his unread legal mail home on April 25, 2025, to his mother, a person not trained in the law, Lewis 518 US at 346, MDOC employees violated Mr. Bell's rights under Mich Admin. Code R 791.6603(7) violating Mr‖ Bell's rights under the First Eighth, and Fourteenth Amendments and MCL 24.232(2)‖

118.] Numerous pro se litigants including Mr. Bell have received hundreds of legal documents at once. During November of 2024, while in segregation Mr. Bell received the contract for settlement related to the bankruptcy proceedings, which is over 200 pages. These documents were sent to Mr. Bell by attorney Brookner in the same manner the legal mail was sent and WRONGFULLY rejected by Def. Truddell. These legal documents fall under the exception explained in ¶ 114

119.] OP 04.07.112 explained in ¶ 70 instructs MDOC staff of two things: (i) that the hearing must be conducted by a LARA administrative law judge; (ii) that it must be conducted within 30 calendar days.

120.] The mail was rejected on Dec. 11, 2024, the hearing wasn't held until Feb‖ 7, 2025, 58 calendar days later violating Mr. Bell's rights under the First and Fourteenth Amendments. Improper hearings delayed review of rejected legal mail, violating MCL 791.252(i) and denying procedural and substantive due process raising claim under 42 USC §§ 1983; 1985(3).

121.] MCL 791.252(i) ensures that administrative hearings must be conducted by an impartial fact finder, when Def. Miller allowed Def. Truddell the person whom wrote the legal mail rejection to conduct the hearing. Def. Miller denied Mr. Bell his substantive and procedural due process rights discussed in ¶119, violating Mr. Bell's rights under the First and Fourteenth Amendments‖

122.] Pursuant to McBride MDOC staff are mandated to provide all hard of hearing and deaf prisoners with effective communication which includes the

videophone and caption phone, 294 F. Supp 3d at 721, also see PD 04.06.155(G).

123.] Denial of ADA auxiliary equipment (videophone) deprive Mr. Bell, an American with a disability, of effective communication with attorney Patel for seven months, violating Lewis 518 US at 384, and Fourteenth Amendment rights, City of Cleburne v Cleburne Living Center 473 US 432, 439 (1985)

124.] PD 04.06.155(P) reads:"If the request is urgent (e.g. pager, shower chair) the Warden may take immediate action to accommodate the request with notification to the Statewide ADA Coordinator within one business day.

125.] Def. Rewerts, warden of DRF, was aware that Mr. Bell needed the videophone in order to have effective communication with lawyer, Kama Patel. The actions of Def. Rewerts of denial on May 20, 2025, of the urgent use of the videophone is outside the scope of his employment. And thus, violated Mr. Bell First amendment rights, Lewis 518 US at 384 and Fourteenth Amendment rights, Cleburne 473 US at 439

126.] Mr. Bell has an interest in unimpaired, confidential communication with an attorney. And is an integral component of the judicial process, as a matter of law, mail from an attorney implicates a prisoners protected legal mail rights, ACLU Fund of Michigan 796 F3d at 643-44.

127.] Def. Truddell violated Mr. Bell's rights under Mich Admin Code R 791.6603(7) and (8); ACLU Fund of MI 796 F3d at 642-44.

128.] Mr. Bell has pled with specificity as required by Rule 26 of the denial of both substantive and procedural Due Process and Equal Protections of the laws without a rational basis effecting a fundamental right.

129.] Mr. Bell was twice denied the right to attend a Court Ordered videoconference at DRF, in case no. 24-004122-AA which Mr. Bell has evidence in the judicial review that MDOC had lied in the misconduct report and violated due process while at TCF, Lewis 518 US at 384; Elrod 427 US at 373.

CLAIM IV
(First, Eighth, and Fourteenth Amendments 42 USC § 1985(2)(3))
RETALIATION

130.] Mr. Bell incorporates ¶¶ 1 thru 129 by reference, claim is exhausted in DRF-25-02-374-27B, was WRONGFULLY rejected.

131.] Defendants are prohibited from retaliating against Mr. Bell for engaging in protected conduct, Thaddeus-X 175 F3d at 394; PD 05.03.116(A).

132.] Mr. Bell was engaged in protected conduct, access to the court, Lewis 518 US at 384, when Def. Truddell retaliated against him by infringing upon his First Amendment freedoms, causing an actual irreparable injury, Elrod 427 US at 373, thus denying Mr. Bell equal protection of the laws, Cleburne 473 US at 439.

133.] Def. Truddell engaged in an adverse action to Mr. Bell's receiving a 50 million dollar settlement in his civil action against a MDOC former contractor (Corizon Healthcare), Thaddeus-X 175 F3d at 394.

134.] Defs: Miller, Garcia, Rewerts, Russell and Jane/John Does working in the furtherance of the deprivation, thereby continuing the adverse action, raising a claim under 42 USC § 1985(3).

135.] Mr. Bell was engaged in protected conduct of requesting a chair, under the equal protection for Americans with disabilities and access to the court, when C.O. Ward issued his True Threat, Counterman v Colorado 143 SCt 2106, 2114(2023) of future cruel and/or Unusual punishment, Wilson 501 US at 297.

136.] Defs: Loomis, Garcia, Rewerts, Russell, Gilbert, Jane/John Doe engaged in an adverse action to exclude Mr. Bell from a federally funded program, ADA videophone, raising a claim under 42 USC § 1985(3).

137.] Defs: Loomis, Garcia, Rewerts, Russell, Gilbert, Jane/John Doe would have not suffered any undue hardship where the ADA videophone and ADA caption phone are federally funded and the equipment was installed and working at the time of request.

"Incoming mail receiving special handling shall be opened and inspected for money, controlled substances and other physical contraband in the prisoner's presences."

145.] Def. Truddell initiated the mail rejection under false pretenses, stating "voluminous" which as explained in ¶ 114 does not apply to LEGAL MAIL.

146.] PD 05.03.118 (BBB) reads:

"Unless the prisoner waives their right to a hearing in writing by choosing an allowable disposition for the item, and the prisoner and staff agree on the appropriate disposition of the item, a prompt hearing shall be conducted pursuant to Administrative Rule 791.3310 to determine if the mail violates policy for the reason(s) identified in the Notice of Package/Mail Rejections (CSJ-316) and, if so, the appropriate disposition of the mail. The hearing officer shall not be the person who issued the Notice."

147.] PD 05.03.118(CCC) reads:

"If a hearing is conducted an Administrative Hearing Report (CSJ-144) shall be completed by the hearing officer. The prisoner shall be provided the opportunity to review the mail or copy of the mail at the hearing unless the review itself would threaten the order and security of the facility, encourage or provide instruction in criminal activity, or interfere with the rehabilitation of the prisoner. If the prisoner is not permited to review the mail or a copy of the mail at the hearing, the hearing officer shall state a reason for the decision on the Administrative Hearing Report."

148.] Mich Admin Code R 791.6603(7) reads:

"The department may intercept, open, inspect, read, and refuse to transmit mail when there are reasonable grounds to believe the mail is being sent contrary to the provisions of this rule. The subrule shall not apply to clearly identified correspondence to any of the following entities, unless a specific written request is made by the entity:

(a) Courts
(b) Attorneys."

149.] None of the mandatory procedures mentions in ¶¶ 142 thru 147 were followed by Def. Truddell nor others MDOC employees.

150.] Mr. Bell has pled with specificity how the actions of defendants are outside the scope of their employment as required by Rule 26.

151.] Defs. Truddell, Miller, Garcia, Rewerts, Russell, Reno, Kasper,

138.] Adverse actions of Defs: Truddell, Miller, Garcia, Rewerts, Russell, Giblert, Reno, Ward, Kasper, Garnsey, and Jane/John Doe are directly connected to Mr. Bell's protected conduct. There would have been no undue hardship to provide Mr. Bell with his legal mail, videophone, nor the chair to conduct legal work. Retaliatory actions include infringing Mr. Bell's access to courts, denial of a chair, threats, and withholding ADA accommodations, causing irreparable injury, Elrod v Burns 427 US 347, 373 (1976).

139.] Mr. Bell has pled with specificity the retaliation he was subjected to for exercising a protected conduct as required by Rule 26 without rational basis effecting substantial rights.

CLAIM V
(First, Eighth, and Fourteenth Amendments 42 USC § 1985(2)(3))
OUTSIDE THE SCOPE OF THEIR EMPLOYMENT

140.] Mr. Bell incorporates ¶¶ 1 thru 139 by reference.

141.] Defendants are not protected under the intracorporate conspiracy doctrine, due to their actions are outside the scope of their employment, Johnson v Hills & Dales Gen Hosp 40 F3d 837, 841 (6th Cir 1994).

142.] Mail rejections and ADA accommodations policies, directives define scope of employment. Defendants conduct (mail rejection, denial of chair and videophone) violated these directives and MDOC rules, exceeding employment authority. Cf. Wilson 501 US at 297, constituting cruel or unusual punishment.

143.] PD 05.03.118(KK) reads:

"When mail requiring special handling is received at a facility, mailroom staff shall confirm the mailing with the identified sender at a verified telephone number (e.g. Michigan Bar Journal). If confirmed the mail shall then be processed with special handling as long as the identified sender was the originator of the mail and is not sending the mail on the behalf of a third-party who is not authorized to send mail that requires special handling."

144.] PD 05.03.118(LL) reads:

Garnsey, and Werd knew or should have known that their actions were in violation of Mr. Bell's substantial statutory and constitutional rights, PD 01.04.110 ADMINISTRATIVE RULES, POLICIES AND PROCEDURES eff. Aug. 15, 2022 reads:

> (A)"All employees shall be informed of Departmental policy directives, operating procedures, DOMs and administrative rules issued by the Department. All current Department policy directives, operating procedures, variances, DOMs, and administrative rules shall be readily available to all employees. Non-compliance with Department policy may leave the Department liable and employees vulnerable to prosecution and civil suits, as well as disciplinary action. Failure to follow policy may also result in an employee not being represented by the Department of Attorney General or not being indemnified by the Department if a monetary judgment is obtained against the employee as set forth in PD 02.01.102 "Litigation- Department and Employees Responsibilities."

152.] Failure to adhere to MDOC's rules, regulations, policies, and procedures, constitutes acting outside the scope of their employment.

CLAIM VI
(Eighth, and Fourteenth Amendments 42 USC § 1985(2)(3))
DELIBERATE INDIFFERENCE

153.] Mr. Bell incorporates ¶¶ 1 thru 152 by reference.

154.] Def. Garnsey reviewed Mr. Bell's spinal x-rays identifying the spinal cord damage, (lumbosacral) and disregarded his medical need for a chair to have lumbar support when Mr. Bell is seated demonstrating deliberate indifference.

155.] Mr. Bell was denied an evolving standard of decency when Defs: Garnsey, Washington, Russell, Rewerts, Mates, Garcia, Murray, Nevins, and Blair refused to provide Mr. Bell with a chair for lumbar support, thereby intentionally inflicting prolonged unnecessary pain and suffering which constitutes torture, is not a normal part of Mr. Bell's prison sentence, Wilson 501 US at 297, raising a claim under 42 USC §§ 1985(3); 1986 and violations of the Eighth Amendment

156.] Defs: Garnsey, Blair, Rewerts, Mates, Murray, Garcia, Washington, VitalCore, and Russell knew of Mr. Bell's spinal injury (lumbosacral) and displayed a blatant disregard to Mr. Bell's health raising a claim under 42 USC §§ 1983, 1985(3),

25 of 36

1986 violating the Eighth Amendment.

157.] PD 03.03.130 reads:

"All prisoners committed to the jurisdiction of the Department shall be treated humanely and with dignity in matters of health care ... and general living condition."

(K)"Staff have a responsibility to protect the lives of ... prisoners... The following are prohibited:

(1) Corporal punishment.
(3) Any act or lack of care, whether by willful act or neglect that injures or significantly impairs the health of any prisoner."

158.] Mich. Admin. Code R 791.718 reads:

"A facility shall establish and maintain written policy, procedure, and practice that protects inmates from all of the following that would constitute a civil or criminal violation.

(a) Personal abuse.
(b) Corporal punishment
(c) Personal injury
(f) Harassment."

CLAIM VII
(Eighth, and Fourteenth Amendments 42 USC §§ 1983, 1985(2)(3))
TORTURE

159.] Mr. Bell incorporates ¶¶ 1 thru 158 by reference.

160.] MCL 750.85 defines torture as:

(1) "[a] person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture.."

(2)"As used in this section:

(a) 'Cruel' means brutal, inhuman, sadistic, or that which torments.

(b) 'Custody of physical control' means the forcible restriction of a person's movement or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful custody;

(d) 'Severe mental pain or suffering' means a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from any of the following:

(i) The intentional infliction or threatened infliction of great bodily injury." (internal quotations edited)

161.] Defs: Washington and Rewerts were made aware of how the stool caused unnecessary and wanton pain to Mr. Bell, from their one-on-one in person conversation on Mar. 27, 2025, and that the pain impedes Mr. Bell's ability to prepare legal documents in his pending and forthcoming legal actions. They displayed a blatant disregard for Mr. Bell's health with their actions. Both Defs: Washington and Rewert were part of this conversation and both had the power and authority to immediately end Mr. Bell's suffering, but neither Def. Washington nor Def. Rewerts took any action to relieve Mr. Bell's pain.

162.] After ¶ 161 conversation, Mr. Bell was still subjected to torture and deliberate indifference by Defs: Washington, Rewerts Russell, Mates, Murray, Garcia, Nevins, and Garnsey raising a claim under 42 USC §§ 1983, 1985(3); and 1986.

163.] Step I grievance responded by Blair and Nevin state, "If Bell needs a chair he will need to get an accommodation from health care stating that he needs a back on a chair due to medical issues." See DRF-25-03-633-03f

164.] April 16, 2025, Mr. Bell submitted a CHJ-549 Health Care Request form for Health Care Request stating: "I am still experiencing being subjected to unnecessary and wanton excruciating pain when sitting on the stool in my cell and was instructed in DRF 25-03-633-03f to get a medical accommodation. Please call me out to again see the physician about this continuous cruel or unusual punishment."

165.] April 16, 2025, RN#99210 responded. Healthcare remains unable to issue details for regular chairs. Please re-kite if you would like an appointment scheduled for an assessment of your back pain."

166.] June 3rd and 4th of 2025, Mr. Bell was subjected to severe muscle spasms in his lower back, due to using the stool and being forced to lay in his

bed for long periods of time in agonizing pain. Pain was shooting from his lower back causing him to lose the ability to stand, sit, or sleep, constituting cruel and unusual punishment, Wilson 501 US at 297.

167.] June 4, 2025, Mr. Bell had C.O. Parker call healthcare. Mr. Bell explained to C.O. Parker that he was experiencing severe spasms in his lower back which is effecting his ability to sleep, walk, and use the bathroom. And that Mr. Bell needed a muscle relaxer shot. Pursuant to PD 03.04.100(VV).

168.] C.O. Parker called healthcare, unknown nures, instructed C.O. Parker to tell Mr. Bell to put in a medical kite, leaving Mr. Bell in prolonged pain, constituting deliberate indifference, torture, cruel and unusual punishment.

169.] June 4, 2025, Mr. Bell put in an URGENT medical request using a CHJ-549 form which stated: "I'm in severe prolonged pain, I need a shot to relax the muscles in my lower back. I've had several spasms."

170.] June 6, 2025, medical provider #99210 responded: "An appointment will be scheduled for an assessment."

171.] Pursuant to PD 03.04.100 (VV) that reads:

"The contact shall be responded to as soon as possible by one or more of the following methods, as determined by the Qualified Health Professional. (1) The prisoner shall be allowed to speak directly to the QHP by telephone. (2) The prisoner shall be allowed to the health service area. (3) The QHP shall go to the prisoner's location to conduct an assessment."

172.] June 4, 2025, the QHP was working outside the scope of his/her employment when nothing occured as outlined in ¶ 171.

173.] June 12th and 24th 2025, Mr. Bell suffered a severe and excruciating spasms while in the shower that caused him to hit his head on the shower wall and almost fell on the floor.

174.] Mr. Bell suffered severe continuous pain until June 16th. Mr. Bell was

not seen by anyone in healthcare until June 25th, where he spoke with RN Turner, who scheduled Mr. Bell to see the provider.

175.] Mr. Bell has pled with specificity the action of deliberate indifference, torture, cruel and/or unusual punishment violating the Eighth Amendment as required by Rule 26.

CLAIM VIII
(Eighth, and Fourteenth Amendments 42 USC § 1983)
CONVERSION OF PROPERTY

176.] Mr. Bell incorporates ¶¶ 1 thru 175 by reference.

177.] "[C]onversion is a claim under both common law and Michigan law." The common law tort of conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his right therein. These wrongful acts of dominion include:(1) intentionally dispossessing another of chattel; (2) intentionally destroying or altering a chattel in the actor's possession; (3) using a chattel in the actor's possession without authority to use it; (4) receiving a chattel under a sale, lease, pledge, gift, or other transaction intending to acquire for himself or another a proprietary interest in it; (5) disposing of a chattel by lease, pledge, gift, or other transaction intending to acquire for himself or another a proprietary interest in it; (6) misdelivering a chattel; or (7) refusing to surrender a chattel on demand. PRA Co v Arglass Yamamura SE LLC US Dist Lexis 215276 at * 31-32 ‖E.D. Mich 2024).

178.] Damages are measured by the value at the time of conversion, Attorney Gen v Hermes 127 Mich App 777, 787; 339 NW2d 545 (Mich Ct App 1983)

179.] Mr. Bell's lawsuit at the time of conversion was valued at $50,000,000.00, In re Tehum Care Services, Inc case no. 23-90086-CML, see document 1815-2.

180.] One may be guilty of conversion by actively aiding or abetting or conniving with another in such an act, furthermore, one may be liable for assisting another in conversion though acting innocently, Trail Clinc PC v Bloch 114 Mich App 700, 706;319 NW2d 638 (Mich Ct App 1982).

181.] Def. Truddell is the genesis of the conversion, on Dec. 11, 2024, she WRONGFULLY rejected Mr. Bell's legal mail (communications) between Mr. Bell and attorney Brookner, discussing the $50 million dollar settlement, by writing a FRAUDULENT mail rejection infringing on fundamental rights. There was/is NO rational penological reason for the legal mail rejection. Def. Truddell's actions violated Mr. Bell's rights under MCL 24.232(2); Mich. Admin Code R 791.6603(7)(b) and (8); PD 05.03.118(PP)(22); DOM 2023-18; Lewis 518 at 384; ACLU Fund of MI 796 F3d at 643-44; First, Eighth, Fourteenth Amendments.

182.] Feb. 7, 2025, Def. Miller conspired with Def. Truddell by working in the furtherance of the conversion where he without a rational penological reason, rejected Mr. Bell's legal mail from attorney Brookner. Def. Miller's actions are in violation of Mr. Bell's rights under MCL 24.232(2); MCL 791.252(i); Mich Admin Code R 791.6603(7)(b) and (8); PD 05.03.118(PP)(22); DOM 2023-18; Lewis 518 US at 384, raising a claim under 42 USC § 1985(3), violating Mr. Bell's First, Eighth, Fourteenth Amendments.

183.] Defs: Garcia, Rewerts, Russell and Jane/John Does directly participated in and conspire to furtherance the conversion, including during grievance exhaustion, violationg statutory and constitutional rights. 42 USC § 1985(3), without rational penological; reason, infringing on fundamental rights.

184.] Mr. Bell has pled with specificity, defendants where direct participants in the conversion of his property, and depriving Mr. Bell of his First, Eighth and Fourteenth Amendment freedoms as required by Rule 26.

30 of 36

CLAIM IX
(First, Eighth, and Fourteenth Amendments 42 USC § 1985(2)(3))
CIVIL CONSPIRACY

185.] Mr. Bell incorporates ¶¶ 1 thru 184 by reference.

186.] Elements of civil action conspiracy are: (1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish an unlawful purpose or a lawful purpose by unlawful means, Mays v Three Rivers Corp. 135 Mich App 42, 48; 352 NW2d 339 (Mich Ct. App 1984)

187.] In this civil action numerous MDOC employees from Director Washington down to C.O. Ward engaged and worked in the furtherance of deprivation of Mr. Bell's substantial statutory and constitutional rights. 42 USC §§ 1983, 1985(2)(3)

188.] Mr. Bell has pled with specificity the direct participation aiding and abetting of MDOC employees as required by Rule 26 raising claims 1985(3), conspiracy to deprive Mr. Bell of his First, Eighth and Fourteenth Amendment freedoms as required by Rule 26.

CLAIM X
(Eighth, and Fourteenth Amendments 42 USC § 1985(3))
CRUEL AND/OR UNUSUAL PUNISHMENT

189.] Mr. Bell incorporates by reference ¶¶ 1 thru 188.

190.] The actions reported are not part of Mr. Bell's sentence, Wilson 501 US at 297, thus are cruel and/or unusual punishment.

191.] Mr. Bell has pled with specificity that the violation reported are not a part of his prison sentence and therefore cruel and/or unusual punishment with specificity as required by rule 26.

EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES

192.] Mr. Bell has exhausted all available administrative remedies as required by 42 USC § 1997e(a), some grievances were WRONGFULLY rejected and require evidentiary hearing.

193.] Mr. Bell filed grievances from Step I thur Step III.

194.] These grievances were WRONGFULLY rejected or deemed non-grievable. Mr. Bell made all reasonable efforts to comply with MDOC's procedures as explained in PD 03.02.130.

195.] Mr. Bell filed a Declaratory Ruling addressing the violations and naming the Defendants which was accepted on its merits by Def. Russell. Reed-Bey v Pramstellar 603 F3d 322, 324-26 (6th Cir 2010).

196.] Therefore, Mr. Bell has satisfied the PLRA exhaustion requirements, and this case is properly before the court.

PREVIOUS CIVIL ACTIONS

197.] Bell v Caruso 2007 US Dist lexis 81853 (W.D. Mich 2007).

198.] Bell v Caruso 2008 US Dist Lexis 48742 (W.D. Mich 2008)

199.] Bell v Caruso 2009 US Dist Lexis 22973 (W.D. Mich 2009).

200.] Bell v Washington 2022 US Dist Lexis 115080 (E.D. Mich 2022)

201.] Bell v Washington 2022 US Dist Lexis 198303 (E.D. Mich 2022)

202.] Bell v Washington 2022 US Dist Lexis 247807 (E.D. Mich 2022)

203.] Bell v Washington 2022 US Dist Lexis 115083 (E.D. Mich 2022)

204.] Bell v Washington 2022 US Dist Lexis 247808 (E.D. Mich 2022)

205.] Bell v Washington 2022 US Dist Lexis 247810 (E.D. Mich 2022)

206.] Bell v Washington 2022 US Dist Lexis 486320 (E.D. Mich 2022)

207.] Bell v Washington 2022 US Dist Lexis 247809 (E.D. Mich 2022)

208.] Bell v Washington 2022 US App Lexis 24447 (6th Cir 2022)

209.] Bell v Washington 2022 US App Lexis 31307 (6th Cir 2022)

210.] Bell v Washington 2023 US Dist Lexis 55221 (E.D. Mich 2023)

211.] Bell v Washington 2023 US Dist Lexis 228229 (E.D. Mich 2023)

212.] Bell v Washington 2023 US App Lexis 25997 (6th Cir 2023)

213.] Bell v Washington 2023 US App Lexis 326595 (6th Cir 2023)

214.] Bell v Washington 2023 US App Lexis 25997 (6th Cir 2023)

215.] Bell v Washington 2023 US APP Lexis 8972 (6th Cir 2023)

216.] Bell v Washington 2023 US App Lexis 32595 (6th Cir 2023)

217.] Bell v Washington 2024 US App Lexis 109829 (6th Cir 2024)

218.] Bell v Washington 2024 US App Lexis 109075 (6th Cir 2024)

219.] Bell v Washington 2024 US App Lexis 4407 (6th Cir 2024)

220.] Bell v Washington 2024 US App Lexis 1803 (6th Cir 2024)

## RELIEF REQUESTED

A. Mr. Bell request that this Honorable court take judicial notice pursuant to FRE 201(c)(2) on the following:

1.] That Mr. Bell, a pro se litigant, has a right of access to the court, which includes the right to prepare, serve, and files whatever documents are necessary to prosecute or defend his civil claim under the First Amendment violating to Lewis 518 US at 384; ACLU Fund of MI 796 F3d at 643-44.

2.] That, Mr. Bell, a pro se litigant, has a right of access to the court which includes the right to send and receive communications to and from judge, court and attorney concerning civil actions under the First Amendment pursuant to Lewis 518 US at 384.

3.] That MDOC actors, agents, and/or employees infringed upon Mr. Bell's First amendment freedoms for a period of time, constituting an irreparable injury pursuant to Elrod 427 US at 373.

4.] That there was no rational penological reason for the infringment on Mr. Bell's First amendment freedom to receive legal mail (communications) where it was done in violation of PD 05.03.118(PP)(22); Mich Admin Code R 791.6603(7)(b) and (8) as well as DCM 2023-18

5.] That MDOC actors, agents, and/or employees were acting outside the scope of their employment when they infringed on Mr. Bell's First Amendment

rights to send and receive communications to an attorney pursuant to <u>Lewis</u> 518 US at 384.

6.] That Mr. Bell as an American with a disability has a statutory right to effective form of communication.

7.] That there was no rational basis for the infringement on Mr. Bell's statutory rights as an American with a Disability.

8.] The denial of a chair to an American with a disability constitutes deliberate indifference.

9.] The denial of a chair to an american with a disability constitutes torture under MCL 750.85

B. Mr. Bell request punitive damages in the following:

1.] Pursuant to MCL 600.2919a for the conversion of property, three times the value of the $50 million dollar settlement (i.e. $150 million) which was intentionally interrupted jointly or severally against Defs: Truddell, Miller, Garcia, Rewerts, and Russell.

2.] $300,000 jointly or severally for denial of access to the court against Defs: Truddell, Miller, Garcia, Rewerts, Russell and Washington.

3.] $83,000 jointly and severally against Defs: Loomis, Garcia, Rewerts, Russell, Gilbert and Washington for excluding an American with a disability from a federally funded program.

4.] $83,000 jointly and severally against Defs: Loomis, Garcia, Rewerts, Russell, Gilbert and Washington for excluding an American with a disability effective forms of communication.

5.] $83,000 jointly and severally against Defs: Truddell, Jane/John Doe, Miller, Garcia, Rewerts, Russell and Washington for retaliation.

6.] $83,000 jointly and severally against Defs: Truddell, Jane/John Does, Miller, Garcia, Rewerts, Russell and Washington for violation of Due Process and Equal Protections of the law

7.] $83,000 jointly and severally against Defs: Washigton, Rewerts, Russell, Mates, Murray, Garcia, Nevins, Garnsey, Kasper, Reno, Ward, and Medical provider for torture.

8.] $83,000 jointly and severally against Defs: Washington, Russell, Rewerts, Mates, Murray, Garcia, Nevins, Garnsey, Reno, Ward, Kasper and Medical provider for deliberate indifference.

C. Mr. Bell request that the court grant compensatory damages in the following:

1.] $50 million dollars for intentionally interfering in Mr. Bell's bankruptcy settlement jointly or severally against Defs: Truddell, Jane/John Doe, Miller, Garcia, Rewerts, and Russell

2.] Cost of litigation jointly and severally against all defendants.

3.] $1,000 daily for everyday Mr. Bell was denied as an American with a disability effective forms of communications.

4.] $1,000 daily for everyday Mr. Bell was denied as an American with a disability a chair with lumbar support.

D. Mr. Bell request that the court grant nominal damages in the following:

1.] $1 against defendants for intentional infringing upon Mr. Bell's First Amendment freedoms of access to the court.

2.] $1 against defendants for intentionally infringing upon Mr. Bell's statutory rights as an American with a disability to effective form of communication.

3.] $1 against defendants for retaliation.

4.] $1 against defendants for intentionally infringiung upon Mr. Bell's constitutional rights of due process and equal protections of the laws.

5.] $1 against Defs: Washington, Russell, Rewerts, Mates, Murray, Garcia, Nevins, Kasper, Reno, Ward, Garnsey and Medical Provider for torture.

6.] $1 against Defs: Washington, Russell, Rewerts, Mates, Murray, Garcia, Nevins, Kasper, Reno, Ward, Garnsey and Medical Provider for deliberate indifference.

E. Any other relief this Honorable Court deems appropriate.

VERIFICATION

I, Tyrone-Anthony Bell, declare (verify, certify, state) that the factual allegation/contentions are true and correct under the penalty of perjury, 28 USC § 1746.

Respectfully Submitted,

_Tyrone-Anthony Bell_

Tyrone-Anthony Bell, Pro Se
MDOC No. 240434
Gus Harrison Corr. Fac.
2727 E. Beecher
Adrian, Michigan 49221

Date: 1/4/26

BONNIE L. DRAPER
NOTARY PUBLIC, STATE OF MI
COUNTY OF LENAWEE
MY COMMISSION EXPIRES Dec 8, 2031
ACTING IN COUNTY OF Lenawee

01/04/2026

Tyrone-Anthony Bell #240434
Gus Harrison Correctional Facility
2727 E Beecher
Adrian, Michigan 49221

FIRST-CLASS

US POSTAGE ᴾᴵᵀᴺᴱʸᴮᴼᵂᴱˢ
ZIP 49221 $ 004.14⁰
02 7W
0008037666 JAN 05 2026

Clerk Of The Court

United States District Court
Western District Of Michigan
Federal Building
110 Michigan Street, N. W.
Grand Rapid, MI 49503