UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE ANTHONY BELL,

Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

Defendants.

Case No. 1:26-cv-115

Hon. Ray Kent

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below. The Court will also deny Plaintiff's motion for injunctive relief (ECF No. 2) and emergency motion for a temporary restraining order and expedited preliminary

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

injunction (ECF No. 14) and proposed order (ECF No. 16) and will grant Plaintiff's motion for a jury trial (ECF No. 8).

## **Discussion**

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Director of the MDOC Heidi Washington, MDOC Legal Administrator Richard Russell, Statewide ADA Coordinator Robin Gilbert, and the following DRF staff: Warden Randee Rewarts, Deputy Warden M. Mates, Assistant Deputy Wardens Jason Garcia and K. Nevins, Facility Managers Unknown Murray and V. Smith, Prison Counselor Unknown Miller, Grievance Coordinator Lisa Becher, Mailroom Personnel Unknown Truddell, American with Disability Coordinator Robert Loomis, Respondents to Step I Grievances Unknown Parties, Correctional Staff Robert Ward, Sergeant Unknown Reno, Resident Unit Manager Unknown Blair, Physician Assistant Audrey Garnsey, Health Unit Manager Unknown Kasper, and Contracted Medical Provider VitalCore Physicians Group, PLLC. Plaintiff sued Defendants in their individual capacities for monetary damages and their official capacities for injunctive relief only. (Compl., ECF No. 1, PageID.4.)

Plaintiff alleges that he has "a special handling" that requires legal mail to be opened in his presence. (*Id.*, PageID.19.) On December 11, 2024, Defendant Truddell opened Plaintiff's legal mail outside of Plaintiff's presence and rejected it for reasons not supported by MDOC policy. (*Id.*, PageID.4, 12.) Plaintiff wrote to Defendant Truddell in December and January, requesting the documents, but did not receive them. (*Id.*, PageID.13.)

On January 14, 2025, Plaintiff wrote to Defendant Garcia concerning the denial of a chair. (*Id.*, PageID.5.) Plaintiff claims that, without the chair, Plaintiff suffered from "extreme muscle spasms." (*Id.*)

On February 3, 2025, Plaintiff put a kite in Defendant Miller's mailbox asking about an administrative hearing concerning the rejection of Plaintiff's legal mail. (*Id.*) The following day, Defendant Miller told Plaintiff, "This is the sixth kite I've received from you, if you send me one more kite, I will personally shred your legal mail and say it's rejected for being voluminous." (*Id.*) Plaintiff wrote to Defendant Rewarts about Defendant Miller's conduct. (*Id.*, PageID.6.)

On February 7, 2025, Defendants Miller and Truddell conducted an administrative hearing concerning the rejection of Plaintiff's legal mail. (*Id.*, PageID.6, 14.) Defendant Truddell acknowledged that the mail was legal mail, but said that there were too many pages to copy, so they would not be giving Plaintiff the documents. (*Id.*, PageID.14.) Defendant Miller then echoed that Plaintiff would not receive the documents. (*Id.*) When Plaintiff informed Defendant Miller that Plaintiff had a "a reply deadline" that he could miss and would file a grievance, Defendant Miller told Plaintiff that he would hold the documents until the grievance was complete. (*Id.*) Defendant Garcia reviewed Plaintiff's Step I grievance and Defendant Unknown Party was the respondent. (*Id.*) Defendant Unknown Party did not interview Plaintiff concerning the grievance. (*Id.*, PageID.15.) Defendants Rewarts and Russell also rejected Plaintiff's grievance. (*Id.*, PageID.16.) Eventually, Plaintiff was forced to send his rejected legal mail to his mother. (*Id.*, PageID.20.)

On February 25, 2025, Defendant Garnsey reviewed Plaintiff's x-rays and provided Plaintiff with "no form of medical relief." (*Id.*, PageID.6.)

On March 27, 2025, Plaintiff told Defendants Washington and Rewarts that his pain was impeding his ability to prepare legal documents. (*Id.*, PageID.27.) Defendants Washington and Rewerts did not take any action. (*Id.*)

Plaintiff is hard-of-hearing and needs hearing aids to communicate. (*Id.*, PageID.17.) On April 1, 2025, Plaintiff filed an ADA request for accommodation with Defendant Loomis. (*Id.*, PageID.18.) On April 9–10, 2025, Plaintiff was unable to communicate with his attorney via a traditional telephone. (*Id.*) Defendant Loomis directed Plaintiff to have a video visit with his lawyer. (*Id.*) Plaintiff filed a grievance related to this issue; however, his grievance and related appeals were denied by Defendants Unknown Party, Garcia, and Russell. (*Id.*)

On April 16, 2025, Plaintiff submitted a kite to healthcare concerning his pain from sitting on a stool and asked for a medical accommodation. (*Id.*, PageID.27.) Plaintiff received a response that "Healthcare remains unable to issue details for regular chairs." (*Id.*)

On May 28, 2025, Plaintiff witnessed a phone technician doing maintenance on the "ADA phones," which were "not being used by prisoners." (*Id.*, PageID.6.)

On May 29, 2025, Plaintiff spoke with Defendant Rewarts about "legal forms [Plaintiff] need[ed] from the internet." (*Id.*, PageID.6.)

On June 3 and 4, 2025, Plaintiff was experiencing severe muscle spasms due to his use of the stool. (*Id.*, PageID.27.) Plaintiff told non-party Correctional Officer Parker that he was experiencing spasms and needed a muscle relaxer. (*Id.*, PageID.28.) Correctional Officer Parker called health services on June 4 or 5, 2025, and informed Defendant Unknown Party that Plaintiff needed a muscle relaxer shot because of "severe muscle spasms" that Plaintiff was experiencing from using a stool. (*Id.*, PageID.6.) Defendant Unknown Party told Correctional Officer Parker to have Plaintiff submit a medical kite. (*Id.*) The following day, Plaintiff received a response

indicating that an appointment would be scheduled. (*Id.*, PageID.28.) Plaintiff "suffered severe continuous pain until June 16th." (*Id.*)

On June 18, 2025, "DRF staff" passed out extra stools. (*Id.*, PageID.7.)

On June 24, 2025, Plaintiff spoke with Defendant Smith about a grievance that Plaintiff had filed "about how DRF staff held his legal JPay messages for a period of three days." (*Id.*)

On June 25, 2025, Plaintiff spoke with non-party Registered Nurse Turner regarding his severe muscle spasms. (*Id.*) Registered Nurse Turner told Plaintiff that "she would put an R&R on [Plaintiff's] file," meaning that a provider must see Plaintiff. (*Id.*) The following day, Plaintiff went to medical to get his hearing aid batteries. (*Id.*, PageID.6.) While there, Plaintiff asked a non-party nurse for a muscle relaxer shot; however, the nurse told Plaintiff that he would need to wait until his callout. (*Id.*, PageID.7.) Plaintiff also sent a kite to Defendant Loomis concerning Plaintiff's April 1, 2025, request to use the ADA phone. (*Id.*)

On June 30, 2025, non-party Dr. Kelly Adams saw Plaintiff about Plaintiff's complaints of back pain and developed a treatment plan that included new x-rays, a CAT scan, and a steroid shot. (*Id.*)

On July 9, 2025, Plaintiff submitted a kite to Defendant Rewarts, asking for immediate use of the ADA phone. (*Id.*)

On July 16, 2025, Plaintiff experienced severe muscle spasms after using the stool to write a kite. (*Id.*)

On July 22, 2025, Plaintiff told Defendant Miller that he has "a deadline" was "being denied access to the court" because he could not make a call or write an email within the remaining time. (*Id.*, PageID.8.)

On August 5, 2025, non-party Dr. Peter Sices issued Plaintiff a medical accommodation for the use of a chair while conducting legal work. (*Id.*) On August 17, 2025, Defendant Ward told Plaintiff that he and Defendant Mates decided that, because Plaintiff has a chair in his room, he didn't need a chair but that Plaintiff "can get the chair this time." (*Id.*) Plaintiff wrote a grievance and kite to Defendant Rewarts concerning this incident. (*Id.*) Plaintiff also filed a request for body worn camera footage and was told by non-party Sergeant Schutt that he would receive a misconduct report if he made that request. (*Id.*, PageID.9.)

On September 9, 2025, Defendant Ward told Plaintiff to speak with Defendant Reno about Plaintiff's grievance concerning Plaintiff's August 17, 2025, conversation with Defendant Ward. (*Id.*) After Defendant Reno spoke with Plaintiff, Defendant Reno contacted either Defendant Nivens or Defendant Garcia, who then called Defendant Kasper and instructed Defendant Kasper to contact Defendant Garnsey to cancel Plaintiff's medical detail. (*Id.*, PageID.10.) On September 11, 2025, Defendant Garnsey saw Plaintiff at a medical callout and cancelled Plaintiff's medical detail, explaining that Defendant Kasper had explained that "medical cannot issued a detail for a chair." (*Id.*)

Plaintiff brings the following legal claims against Defendants: denial of access to the courts, violation of the ADA, violations of due process and equal protection, retaliation, deliberate indifference, "torture," "conversion of property," civil conspiracy, and cruel and unusual punishment. He seeks injunctive, declaratory, and monetary relief. (*Id.*, PageID.33–36.)

## II. Misjoinder

Plaintiff names more than 20 Defendants in his lists of parties and describes events spanning from December 2024 through September 2025. At this stage, the Court must address whether the Defendants and claims are properly joined in a single lawsuit.

### A. Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has

considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim. Courts are obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, the first event described within Plaintiff's complaint concerns Defendant Truddell's December 11, 2024, improper opening and rejection of Plaintiff's legal mail. (Compl., ECF No. 4, 12, 13, 19.) Plaintiff may proceed with all claims that he has against Defendant Truddell. However, Plaintiff has not alleged any facts that would support an inference that Plaintiff's claims against the remaining Defendants arise out of this same transaction or occurrence. Plaintiff has, therefore, improperly joined Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC.

**B. Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are

just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations against Defendants Rewerts

and White concern events that took place in 2024. Therefore, Plaintiff's allegations provide no indication that the statute of limitations has or will run on Plaintiff's claims against misjoined Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC. Thus, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against misjoined Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC because they are misjoined. The Court will dismiss Plaintiff's claims against Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC without prejudice to the institution of a new, separate lawsuit or lawsuits.[2]

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

---

[2] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendant Truddell in her official and individual capacities. A suit against an individual in her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff sues Defendant Truddell in her official capacity for injunctive relief only. (Compl., ECF No. 1, PageID.4.) An official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Importantly, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined to DRF, which is where he avers that Defendant Truddell is employed. Because Plaintiff is no longer at DRF, he cannot maintain his official capacity claims for injunctive relief.

**B. Individual Capacity Claims**

Plaintiff brings claims against Defendant Truddell in her individual capacity for "monetary damages only." (Compl., ECF No. 1, PageID.4.) These claims include First Amendment claims for interference with Plaintiff's legal mail, interference with Plaintiff's access to the courts, and retaliation (*id.*, PageID.22–24), Eighth Amendment claims (*id.*, PageID.19–20), Fourteenth Amendment claims for violation of Plaintiff's rights to procedural and substantive due process and equal protection (*id.*, PageID.19–20), claims under 42 U.S.C. § 1985 for conspiracy (*id.*, PageID.31), and violation of MDOC policy (*id.*, PageID.19–20).

**1. First Amendment Claims Concerning the Right to Send and Receive Mail**

Plaintiff alleges that Defendant Truddell wrongfully opened and rejected Plaintiff's legal mail, interfering with his First Amendment rights. "A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send

and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections." *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993)). Here, taking Plaintiff's allegations as true, as is required at this stage, the Court will allow Plaintiff to proceed with his First Amendment claims concerning Defendant Truddell's actions in opening and rejecting Plaintiff's legal mail.

**2. First Amendment Access to the Courts Claims**

Plaintiff alleges that Defendants Truddell interfered with Plaintiff's access to the courts by not providing Plaintiff with his legal mail. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop*, 977 F.2d at 1009.

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391 (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's complaint does not include any well-pleaded factual allegations that would allow the Court to infer that Defendants hindered a non-frivolous legal claim in a direct appeal, habeas corpus application, or civil rights claim. In relying solely upon conclusory allegations and legal conclusions without any supporting facts, Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See*

*Iqbal*, 556 U.S. at 678-79. Therefore, the Court will dismiss Plaintiff's First Amendment claims concerning his right to access to the courts.

**3. First Amendment Retaliation Claims**

Plaintiff alleges that Defendant Truddell retaliated against Plaintiff because Plaintiff was "receiving a 50 million dollar settlement in his civil action against a MDOC former contractor (Corizon Healthcare)." (Compl., ECF No. 1, PageID.22.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff does not allege sufficient facts to state a claim of First Amendment retaliation against Defendant Truddell. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). Therefore, "alleging merely the ultimate fact of retaliation is

insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff alleges only that Defendant Truddell wrongfully rejected Plaintiff's legal mail after Plaintiff was engaged in a settlement with former-MDOC contractor, Corizon Healthcare. There is nothing to suggest that Defendant Truddell was aware of Plaintiff's settlement with Corizon Healthcare, let alone that Defendant Truddell's decision to reject Plaintiff's legal mail was motivated by Plaintiff's settlement. Accordingly, the Court will dismiss Plaintiff's claim of First Amendment retaliation.

**4. Eighth Amendment Claims**

Plaintiff states that he brings an Eighth Amendment claim against Defendant Truddell related to Defendant Truddell's handling of Plaintiff's legal mail but does not specify the nature of that claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment bars punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–103 (1976) (internal quotation marks omitted). To establish an Eighth Amendment claim, the prisoner must

show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Not "every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*. Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Rhodes*, 452 U.S. at 347. Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). Like a medical care claim, the deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff describes that Defendant Truddell deprived Plaintiff of his legal mail and presided over the administrative hearing, which Plaintiff contends deprived him of a fair process. These alleged "deprivations" do not pose a sufficiently serious risk to Plaintiff's health or safety so as to give rise to an Eighth Amendment claim. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

**5. Fourteenth Amendment Procedural Due Process Claims**

Plaintiff specifically brings Fourteenth Amendment claims concerning the confiscation of his property, specifically, his legal mail. Plaintiff claims that Defendant Truddell violated Plaintiff's right to due process by rejecting Plaintiff's legal mail and then presiding over the hearing regarding that rejection.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401). However, any due process claim

concerning the deprivation of Plaintiff's legal mail is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

The Court notes that numerous state post-deprivation remedies are available to Plaintiff. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 13, 2023). Second, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective May 20, 2024). And third, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Here, Plaintiff does not claim that his state post-deprivation remedies are inadequate. Accordingly, Plaintiff's Fourteenth Amendment claim concerning the deprivation of his legal mail will be dismissed.

**6. Fourteenth Amendment Substantive Due Process Claims**

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Plaintiff's allegations, however, fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

Further, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, Plaintiff's claims are governed by specific constitutional

amendments discussed herein. Consequently, any intended substantive due process claims will be dismissed.

#### 7. Fourteenth Amendment Equal Protection Claims

Plaintiff alleges that Defendant Truddell violated Plaintiff's right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, Plaintiff must show that Plaintiff "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations whatsoever to support an equal protection claim. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory, which fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claim will be dismissed.

#### 8. Claims under 42 U.S.C. § 1985 for Conspiracy

In addition to his claims under § 1983, Plaintiff makes passing reference to claims under 42 U.S.C. § 1985. Section 1985 provides:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

There are no allegations in Plaintiff's complaint that would support a claim that Defendant Truddell: (1) conspired to prevent an officer of the United States from performing his duty; (2) conspired to intimidate a participant in a proceeding in a court of the United States or conspired to interfere with due process in state courts with the intent to deprive persons of their equal protection rights; or (3) conspired to deprive Plaintiff of the equal protection of the laws as discussed in connection with Plaintiff's Fourteenth Amendment equal protection claim. Therefore, Plaintiff fails to state a claim under 42 U.S.C. § 1985.

**9. Violations of MDOC Policy**

Plaintiff faults Defendant Truddell for not abiding by MDOC policies and procedures related to the handling of legal mail and administrative hearings. Such assertions, however, fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any claims premised upon violations of MDOC policy and procedure will be dismissed.

**C. State Law Claims**

Plaintiff also brings claims against Defendant Truddell for violation of Michigan state law. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff continues to have a pending federal claim against Defendant Truddell, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

**IV. Motions for Injunctive Relief**

With his complaint, Plaintiff filed a motion for prospective injunctive relief. (ECF No. 2.) Plaintiff also filed an emergency motion for a temporary restraining order and expedited preliminary injunction (ECF No. 14) and proposed order (ECF No. 16) on May 11, 2026.

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that

must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Moreover, where a prison inmate seeks an order to enjoin state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Here, Plaintiff cannot succeed in satisfying his initial burden. As discussed above, it is well established that a prisoner's claims for injunctive relief become moot once the prisoner has been transferred from the facility of which he complained to a different facility. *See Colvin v. Caruso*,

605 F.3d 282, 289 (6th Cir. 2010) ("[A]ny declaratory or injunctive relief that Colvin seeks stemming from his complaint has been mooted by his transfer to a different prison facility.") Accordingly, because Plaintiff cannot demonstrate an entitlement to injunctive relief, the Court will deny Plaintiff's motion for prospective injunctive relief, (ECF No. 2), emergency motion for a temporary restraining order and expedited preliminary injunction (ECF No. 14), and proposed order (ECF No. 16).

**V. Motion for Jury Trial**

Plaintiff has filed a motion for a jury trial pursuant to Federal Rule of Civil Procedure 38(b)(1). (ECF No. 8.) The Seventh Amendment's right to a jury trial applies to actions seeking legal relief under Section 1983. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999); *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Because Plaintiff requests compensatory and punitive damages, which constitute legal relief subject to the Seventh Amendment guarantee, the Court will grant Plaintiff's motion.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, pursuant to Rule 21, the Court determines that Defendants Washington, Russell, Rewarts, Mates, Garcia, Nevins, Murray, Smith, Miller, Becker, Loomis, Unknown Parties, Gilbert, Ward, Reno, Blair, Garnsey, Kasper, and VitalCore Physicians Group, PLLC will be dropped as misjoined and the Court will dismiss Plaintiff's claims against these Defendants without prejudice pursuant to Rule 21.

Having conducted the review required by the PLRA, the Court determines that the following claims against Defendant Truddell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): official capacity claims, First Amendment access to the courts claims, First Amendment retaliation claims, Eighth Amendment claims, Fourteenth Amendment procedural and substantive due process claims, Fourteenth

Amendment equal protection claims, claims under 42 U.S.C. § 1985 for conspiracy, and claims premised upon the violation of MDOC policy. Plaintiff's First Amendment claims against Defendant Truddell concerning Plaintiff's right to send and receive mail and his supplemental state law claims remain in the case.

The Court will also deny Plaintiff's motion for injunctive relief (ECF No. 2) and emergency motion for a temporary restraining order and expedited preliminary injunction (ECF No. 14) and proposed order (ECF No. 16) and will grant Plaintiff's motion for a jury trial (ECF No. 8).

An order consistent with this opinion will be entered.

Dated: August 18, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge